Judge Rowan
delivered the opinion of the court.
Matthew Walton, resident of Washington county, departed this life about the 11th of January, 1819. A writing, purporting to be his last will and testament, was exhibited by Frances Walton, widow and relict of the said Matthew Walton, to the county court of that county, at the succeeding February term of that court, and was, at her instance, proved by two of the subscribing witnesses thereto, and ordered by the court to be recorded as the last will and testament of the said Walton; to reverse which order of the county court, Stephen Ray and Susan M. Ray his wife, who is one of the heirs of the said Matthew, sued out this writ of error. Upon the blank leaf of the sheet upon which the will is written, is the following endorsement, viz: “This will is intended to be altered, and will “be, time is given: W.” in the hand writing of the said Walton, Jacob Seay, one of the subscribing witnesses to the said will, deposed that he had no recollection of subscribing his name as a witness to the said will, or of anything which transpired at the time; but stated that his name, as an attesting witness thereto, must have been written by himself, as the hand writing Was his—and added, that it had been his uniform habit through life, never to attest an instrument of writing, unless he saw the maker thereof execute it, or heard him acknowledge the execution thereof. Dabney Cosby, another of the subscribing witnesses thereto, deposed that Jacob Seay, Boswell B. Degraffenreedt, and himself were, many years ago, sitting in the porch of Gen. Matthew Walton’s house; that the said Walton came to the door, requested them to walk into the *72 hall, and when they had walked in, went to his desk, took out the will and signed and sealed it in their presence, and having acknowledged his signature and seal, requested them to subscribe their names as attesting witnesses thereto, which they did in the presence of the said Walton, and in the presence of each other; that he has no recollection that he was told by Walton that the paper so executed and attested as above stated, was the will of the said Walton, or that the said Walton said any thing about the purport or contents of the paper.
It is no objection to the competency of a deposition that it is in the hand writing of the party or his agent, it will be presumed to have been so written in the presence and under the superintendence of the magistrate.
A witness may refresh his memory by refering to notes made by himself at the time or shortly after the transaction, but cannot read his evidence from a manuscript prepared by himself, much less by another. Vide 1 Mars. 188, acc.
The will bears date the 9th day of September, 1804. The deposition of Boswell B. Degraffenreedt, the third and last subscribing witness to the said will, was proved to have been written wholly by Mr. J. Hughes, the agent of Mrs. F. Walton, and was submitted to the court, subject to an objection made on that account to its competency.
It was alledged by the counsel in support of the objection to the competency of Degraffenreedt’s deposition, that the practice in England and in the courts of the United States, was suppress a deposition, when it appeared to written wholly in the hand writing of the party or his agent. There are numerous cases in which depositions have been suppressed in the English courts, when they appeared to have been wholly made out by the party or his agent, before they were sworn to. But no case can be found, it is believed, in which a deposition was suppressed, because the testimony of the witness, as he detailed it from recollection, under oath, was penned by the party or his agent, with the permission, in the presence, and under the superintendance, of the magistrate or commissioner, before whom it was directed to be taken. The true reason upon which the suppression has been ordered is, that the deposition thus prepared by the party, is not testimony according to the rules of evidence either in courts of law or equity—for the rules in both courts, require that the witness shall speak from memory. He cannot, in either court, read his evidence from a manuscript previously prepared by himself; still less should he be permitted to read as his evidence, a manuscript penned by the party or his agent—he may refresh his memory by notes made by himself, at the time, or very shortly after the transaction took place.
The deposition of Degraffenreedt was, as appears from its face, penned by the agent of Mrs. Walton, but penned in the presence of the magistrate, (and we must presume *73 with his permission, under his direction, and subject to his correction,) from the mouth of the witness speaking under oath, and is, therefore, not within either the letter or the reason of the rule to which we have been referred. We cannot, therefore, suppress it: We must use it in this case as competent evidence, subject to any deduction to which its import may be liable, from any display which we may discover therein, of the art or skill of the agent who penned it. The deposition of Degraffenreedt, in addition to the facts detailed by Mr. Cosby, in the detail of which it corresponds exactly, states that gen. Walton, after he had called them from the porch to the room, and after he had produced, signed and sealed the will aforesaid, connected with his request of them to attest it, the observation, that he believed the law required that a will should be attested by three witnesses.
The writing signing and attesting of a will, are of themselves a sufficient publication.
Two points were made by the counsel of Ray and ux:—1st, That the instrument was not duly published by the said Walton as his last will and testament; and 2d, If it was duly published, that it was revoked by the indorsement thereon above recited. As to the first point—we think, if an express publication were required, it was sufficiently proved by the testimony of Degraffenreedt. He states that Walton, when he called upon Seay, Cosby and himself, to attest the instrument, expressed it as his belief, that the law required three witnesses to a will. He states, moreover, that Walton, on the next day, told him that the paper which he had attested on the day before, was his will; that he was going to the eastward, and thought it prudent to provide for his wife, before he set out on that journey. It is objected that the memory of Degraffenreedt is too good; that he remembers what no other of the subscribing witnesses remember, and what it is not likely he should have remembered, if it had transpired. If the law requires express publication to be proved—that requisition must be predicated upon the practicability of making the proof, which must depend upon the competence of the human memory thereto—the declaration, by the testator, that the paper signed and attested was his last will and testament, made at the time of the signature and attestation thereof, might or might not, after the lapse of many years, be recollected by all, someone, or none, of the subscribing witnesses.
We cannot, therefore, believe, that the efficacy of the durable solemnities required by the statute, viz: writing, *74 signing and attestation, can be reasonably made to depend upon the frailty of the recollection of the subscribing witnesses, as to parol declarations made by the testator, of his intention in using those solemnities.
An endorsement made on a will, indicating an intention to alter or modify it at a future day, is no revocation thereof.
The publication of his will by the testator, about which there is much confusion in the British opinions, is to be found in, and deduced from, the observance by the testator, in making his will of the solemnities required by the statute. The will of the testator, while it rests in his own mind, is private—secret: when it is reduced to writing, it ceases to be so—it exists on paper: when that paper is signed and acknowledged in the presence of third persons, and when those third persons attest the exhibition, signature and acknowledgment of it by the testator, by the annexation of their signature thereto—the will is published by the testator: Every solemnity required by the statute, implies publicity—the concurrence of them all, confers and completes the requisite publication. Indeed, when a man has written and signed with his own hand, his will—he has thereby published it. The present will was written and subscribed wholly by the testator himself, and being wholly in his hand-writing, must have been considered as duly published, independent of the other facts in the case. We can, therefore, have no hesitation in saying that this will was duly executed and published by the testator.
It remains to enquire whether this will was revoked by the testator. The above recited endorsement upon the blank leaf thereof, is relied upon as a revocation. That endorsement is without date, and is in the following words, viz: “This will is intended to be altered, and will be—time is given." This endorsement was made by the testator before, at the time, or after, he executed the instrument: If before, it was annulled by the consummation of the instrument: If at the time, it would be absurd to give it a revoking effect—it would be to ascribe to the testator the intention to create and destroy the same thing, at the same time. It must, therefore, upon the supposition that it was made then, be considered rather to import an affirmance than a revocation of the will. In the same view must it be taken on the supposition that it was made, afterwards. The terms, “This will,” import not an extinction, but a recognition of it as a will, and the subsequent words, “is intended to be altered,” that it is to remain in the character in which it is recognized by the words preceding, viz: as *75 a will, until the alteration is made—and this import is strengthened by the words which follow, viz: “and will be, time is given.” The fair import of the sentence is, we think, that the testator contemplated not a revocation, but an alteration of some of the provisions of this will, but intended that it should be considered his will until he should alter it The word alter, so far from importing the destruction, imports the continuance of the thing altered, in a modified state: Its form is varied by the alteration, its essence remains—an entity can be altered—a nonentity cannot. Had the testator intended to revoke his will, he would have used different language, or he would have destroyed, cancelled or obliterated it.
Hardin and B. Hardin for plaintiff, Wickliffe and Bibb for defendant.
We are constrained, therefore, to say, that the paper purporting to be the last will and testament of Matthew Walton, was by him duly executed and published as such, and that the endorsement thereon is no revocation thereof.-Wherefore, it is considered that the order of the county court establishing the will, be affirmed with costs.